IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:07-CV-176-H

| | |
|---|---|
| JERRY PARKER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| SMITHFIELD PACKING COMPANY, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

This case comes before the court on the motion by plaintiffs Jerry Parker, et al. ("plaintiffs") to exclude the expert opinions of Jeffrey Fernandez ("Fernandez") (D.E. 213).[1] The motion was referred to the undersigned for a memorandum and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), by order of the presiding Senior District Judge. The motion has been fully briefed.[2] For the reasons that follow, it will be recommended that the motion be denied. This recommendation and the underlying analysis are, of course, based on the record as it currently stands. It is therefore subject to further development of the record in proceedings before and during trial, and the authority of the presiding Senior District Judge over such proceedings.

---

[1] The expert opinions referenced are those reflected in the report by Fernandez that defendants have filed, his deposition testimony, and his anticipated testimony at trial.

[2] Plaintiffs filed a memorandum of law (D.E. 214) and exhibits (D.E. 213-1 through 213-13) in support of their motion to exclude Fernandez, and defendants filed a memorandum of law (D.E. 229) and exhibits (D.E. 229-1 through 229-14) in opposition to the motion.

## BACKGROUND

In this action, plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., arising from their employment with with Smithfield Packing Company, Inc. and Premium Standard Farms, Inc.[3] (collectively "defendants") at their Clinton, North Carolina pork processing facility. In their amended complaint, plaintiffs allege that defendants failed to compensate them for time spent engaged in donning and doffing protective equipment and related activities. (Am. Compl. (D.E. 71) ¶ 12). The specific activities for which they allege they were not compensated include: (1) obtaining their required protective equipment from designated areas in the plant; (2) walking to and from the work station, processing line, or both; (3) donning and doffing protective item and hygiene-related equipment before their shift, during their shift, and after their scheduled shift ends; (4) waiting for a shift to begin or for relief to arrive; (5) washing and cleaning tools and other equipment; and (6) other pre- and post-shift activities required by defendants. (*Id.*).

Plaintiffs seek unpaid back wages, unpaid benefits, liquidated damages, attorneys' fees, and other relief. (*Id.* ¶ 20). They assert their FLSA claims as a collective action, pursuant to the provisions of that statute, 29 U.S.C. § 216(b). (*Id.* ¶ 2). Both defendants generally deny plaintiffs' material allegations. (*See* Defs.' Ans. (D.E. 76, 77)).

## DISCUSSION

### I. STANDARD FOR ADMISSION OF EXPERT TESTIMONY

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). A

---

[3] Defendant Premium Standard Farms owned and operated the facility in question from 2000 to 2007 when it was purchased by defendant Smithfield Packing Company, Inc.

2

district court is granted broad latitude in making its determination on the admissibility of proposed expert testimony. *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994) ("The trial judge has broad discretion under Rule 702.").

Rule 702 provides that expert testimony is appropriate when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* Courts have distilled Rule 702's requirements into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gate-keeping obligation of ensuring that expert testimony meets both requirements. *Kumho Tire*, 526 U.S. at 147; *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006).

In order to be considered relevant, the proposed expert testimony must appear to be helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-92. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (cited in *Lacayo v. Sodoma*, 122 F.3d 1061 (Table), 1997 WL 583639, at *3 (4th Cir. 22 Sept. 1997)); *accord Koger v. Norfolk S. Ry. Co.*, No. 1:08-0909, 2010 WL 692842, at *1 (S.D. W. Va. 23 Feb. 2010) (citing *Kopf*).

"'[T]he test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability

determination.'" *United States v. Wilson*, 484 F. 3d 267, 274 (4th Cir. 2007) (emphasis added) (quoting *Kumho Tire*, 526 U.S. at 141-42). One factor pertinent to reliability is the proposed expert's qualifications. *See Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1266 (D. Kan. 2003). A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. *Kumho Tire*, 526 U.S. at 147. The Fourth Circuit has ruled that, when an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" *Kopf*, 993 F.2d at 377 (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989)); *accord The Harvester, Inc. v. Rule Joy Trammell & Rubio, LLC*, No. 3:09cv358, 2010 WL 2653373, at *1 (E.D. Va. 2 July 2010) (citing *Kopf*).

Additional factors also bear on the reliability of the expert's testimony. They may include: "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and (4) whether the theory or technique enjoys general acceptance within the relevant community." *Tunnell v. Ford Motor Co.*, 245 Fed. Appx. 283, 286 (4th Cir. 2007) (citing *Kumho Tire*, 526 U.S. at 149-50); *accord Daubert*, 509 U.S. at 593-94.

Of course, the admission of expert testimony must be considered within the context of the other rules of evidence. In particular, Rule 403 provides that the court must ensure that the probative value of any proffered evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time,

4

or needless presentation of cumulative evidence." Fed. R. Evid. 403. As this court has noted, "[d]espite the court's ability to exercise broad discretion and flexibility when determining the admissibility of expert testimony, the court must balance this discretion with the concerns of Rule 403 to ensure that the probative value of the proffered testimony is not 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 725 (E.D.N.C. 2007) (quoting Fed. R. Evid. 403).

## II. FERNANDEZ'S QUALIFICATIONS AND OPINIONS

Fernandez conducted a time and motion study at defendants' Clinton facility. Defendants seek to introduce at trial the 20 October 2009 report (D.E. 213-4) Fernandez prepared on this study and related testimony as evidence of the amount of time it takes production employees to don, doff, wash, and dip various items, and to walk between different points in the facility. The report sets out Fernandez's opinions on these issues and a summary of his qualifications. Appended to the report is a copy of his resume (D.E. 213-10).

Fernandez is Principal Consultant at JF Associates, Inc., an engineering consulting firm. (Fernandez Resume 3). He holds a Master's in Science and Ph.D. in Industrial Engineering from Texas Tech and a Bachelors of Engineering in Mechanical Engineering from NED University of Engineering and Technology in Pakistan. (*Id.*). He is a registered professional engineer and certified professional ergonomist. (*Id.*). Fernandez worked as a Professor in the Department of Industrial and Manufacturing Engineering at Wichita State University. (*Id.*). He has published more than 160 articles and is co-author of an applied occupational ergonomics textbook. (*Id.*). He currently serves as an adjunct professor at Catholic University. (*Id.*).

Fernandez has testified as an expert in numerous cases involving a variety of occupational tasks and was employed as a consulting expert by the U.S. Department of Labor Wage and Hour Division. (*Id.*; List of Testifying Information (D.E. 213-9) 3). In his work for the Department of Labor, Fernandez conducted a time requirement analysis of the pre-shift donning, post-shift doffing, and post-shift cleaning of protective equipment at a beef processing plant in Iowa. (Fernandez Rep. 4).

In his report, Fernandez offers opinions on the time it takes employees at the Clinton facility to perform a number of identified activities. (*Id.*). More specifically, the report contains a summary of total time requirements to don and doff designated items, walk to certain areas, and wash items (*id.* 16), and his conclusive opinions on those times (*id.* 20).

Fernandez developed these opinions as to all activities other than walking using the methodology known as elemental analysis. (*Id.* 4). It involves breaking down each activity, such as donning a belly guard, doffing a belly guard, or washing equipment, into short elements and measuring the time for each separately. (*Id.*). Fernandez used this methodology in the study he conducted for the Department of Labor. (*Id.* 9). For measuring walking times, he used the Work-Factor system, which provides a standardized walking rate and multiplies that rate by the distance employees actually walk. (*Id.* 7). Fernandez's opinions are based on site visits by him to the Clinton facility on two dates, site visits by eight of his associates (seven industrial engineers and one videographer) on five dates, the videotapes taken of employees during these visits by nine video cameras, the measurements of walking distances taken during the visits, and observations made during the visits. (*Id.* 2).

6

## III. ADMISSIBILITY OF FERNANDEZ'S OPINIONS

Plaintiffs contend that Fernandez's opinions fail to meet both the relevance and reliability requirements for admissibility. The court disagrees.

Plaintiffs challenge the relevance of Fernandez's opinions on the grounds that the elemental analysis methodology he used is inconsistent with the legal standard for determining compensable time as established by the United States Supreme Court in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). That case involved application of the so-called "continuous workday rule" to meat and poultry processing plants. That rule provides that the periods of time between the commencement of an employee's first principal activity of the workday and the completion of his last principal activity, excluding bona fide meal periods and rest breaks, must be included in the computation of hours worked. *Id.* at 28 n.3; 28-30. The *Alvarez* court ruled that any activity that is "integral and indispensable to a principal activity is itself a principal activity" and is therefore part of the continuous workday for which the employee must be compensated. *Id.* at 37 (internal quotation marks omitted). Because the donning and doffing of protective gear had been found by the trial courts to be such an integral and indispensable activity, the time spent on it was held to be compensable. *Id.* at 30, 37. The Court also ruled that the time spent by employees, during a continuous workday, walking between the changing area where they donned and doffed protective gear and the production area was includable in the computation of hours worked. *Id.* at 30, 37.

Plaintiffs contend that *Alvarez* requires that "actual activities [be] measured based on a continuous work time." (Plfs.' Mem. 3). They define the central time measurement issue in this case as "quantifying the amount of time spent by employees in their 'continuous workday' for which they were not compensated." (*Id.* 12). In contrast, they say, Fernandez's methodology analyzes "bits

and pieces of the workday . . . as opposed to the continuous workday" and ignores the reality that "employees do not perform activities separately and discreetly [*sic*]." (*Id.* 5). While plaintiffs state that Fernandez's approach may be suitable to improving workplace efficiency and ergonomics, it and the information it produces are not relevant to determining the amount of compensable time under the continuous workday principles reflected in *Alvarez*.

These contentions are without merit, and the court finds that Fernandez's opinions are relevant. The time required for donning and doffing and the related activities at issue are not within the everyday knowledge and experience of a lay juror. Fernandez's opinions would provide the jury information on this issue and would therefore be helpful to it. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 946 (W.D. Wis. 2008) (finding Fernandez's expert report relevant in face of challenges like those brought by plaintiffs here). More specific issues on which Fernandez's opinions would shed light include whether the amount of time for which defendants paid employees for these activities was adequate, whether the amount of time spent on particular activities is so small they do not have to be compensated under the applicable law, and whether the amount of time claimed by plaintiffs for particular activities is excessively high. Plaintiffs obviously also believe that expert opinions on the issue of the amount of time required for the activities at issue would be helpful to the jury because they themselves have proffered an expert on it. (*See* Mericle Rep. (D.E. 221-4)).

Fernandez's opinions would be helpful and thereby relevant even if it is assumed, as plaintiffs contend, that it reflects only a portion of the time required for the various activities, not the full time required when they are performed on a continuous basis. At least in the present context, even purportedly incomplete information would be better than none. Plaintiffs will, of course, have

8

the opportunity to point out any purported gaps in Fernandez's opinions at trial to assist the jury in evaluating it.

Plaintiffs' principal challenge to the reliability of Fernandez's opinions is also based on its purported noncompliance with the continuous workday principles of *Alvarez*. But plaintiffs have not shown that the methodology used by Fernandez is prohibited by *Alvarez*. Rather, the methodology simply conflicts with plaintiffs' interpretation of *Alvarez*. *Kasten*, 556 F. Supp. 2d at 946-47 (rejecting challenges to Fernandez's expert report on similar grounds). Inconsistency of an expert witness's opinions with the legal theory of an opposing party manifestly does not render the opinions unreliable. Such conflicts are inherent in our adversarial court system, particularly in an area of the law, such as this, which is still developing.

Similarly, plaintiffs complain that at his deposition Fernandez was not familiar with the continuous workday principles upon which they rely. The complaint is feckless. He is not being offered as an expert on the law applicable to this case and, indeed, he could not be. *See The Harvester, Inc.*, 2010 WL 2653373, at *4 (holding that issues resolved as a matter of law are for the court and not appropriate for expert testimony).

Plaintiffs do not contest the scientific validity of the elemental analysis methodology used by Fernandez. In any event, defendants have shown through the evidence and other information cited in their memorandum that the methodology has been tested and subjected to peer review and publication, has no high known or potential rate of error, and enjoys general acceptance within the field of industrial engineering. (*See* Defs.' Mem. 7-8, 17-20); *see also Tunnell*, 245 Fed. Appx. at 286 (identifying foregoing factors in reliability analysis). Similarly, although plaintiffs suggest that Fernandez lacks the requisite qualifications to offer his opinions, the summary of his qualifications

9

above and additional information discussed by defendants in their memorandum show that he is qualified. (*See* Defs.' Mem. 5-7). As proffered by defendants, he is an expert in industrial engineering with an expertise in measuring time associated with human activities.

The other arguments by plaintiffs also fail. For example, their contention that Fernandez did not have sufficient personal involvement in the development of his opinions to offer them is belied by the discussion of his involvement in his report and the additional information of record discussed in defendants' memorandum. (*See* Fernandez Rep., *e.g.*, 2, 14; Defs.' Mem. 8-11). Although plaintiffs challenge the Work-Factor system used by Fernandez to compute walking time, plaintiffs' own expert used the same basic methodology to estimate walking times. (Mericle Rep. 1).

Ultimately, plaintiffs' challenges to the relevance and reliability of Fernandez's opinions merely go to their weight, not their admissibility, and these contentions are more appropriately advanced through cross-examination. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (stating that in making a determination on the reliability of expert testimony "the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. . . . [and] [a]s with all other admissible evidence, expert testimony is subject to being tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof") (internal citations omitted); *Reynolds v. Crown Equip. Corp.*, 5:07CV00018, 2008 WL 2465032, at *15-16 (W.D. Va. 16 June 2008) (finding expert's testimony sufficiently reliable and noting that inconsistencies would be subject to vigorous cross-examination and would go to the weight given experts' testimony, not admissibility). For this and the other reasons stated, plaintiffs' motion should be denied.

## CONCLUSION

For the foregoing reasons, and subject to further pretrial and trial proceedings and the authority of the presiding Senior District Judge over such proceedings, IT IS RECOMMENDED that plaintiffs' motion to exclude Fernandez's opinions be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 20 day of August 2010.

James E. Gates
United States Magistrate Judge