IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:07-CV-176-H

JERRY PARKER, et al.,　　　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　　　　Plaintiffs,　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　v.　　　　　　　　　　　　）　**MEMORANDUM AND**
　　　　　　　　　　　　　　　　　）　**RECOMMENDATION**
　　　　　　　　　　　　　　　　　）
SMITHFIELD PACKING COMPANY, INC.,　）
et al.,　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　　　　Defendants.　　　　）

This case comes before the court on two motions for partial summary judgment filed by

defendants Smithfield Packing Company, Inc. and Premium Standard Farms, L.L.C. (collectively

"defendants"). One (D.E. 217) seeks dismissal of certain claims relating to non-unique (*i.e.*, standard

or generic) items of equipment and the other (D.E. 215) dismissal of certain claims relating to knife

workers. The motions were referred to the undersigned for a memorandum and recommendation,

pursuant to 28 U.S.C. § 636(b)(1)(B), by the presiding Senior District Judge. The motions have been

fully briefed.[1] For the reasons set forth below, it will be recommended that each of the motions be

allowed in part and denied in part.

---

[1] In support of their motion for partial summary judgment regarding non-unique items, defendants filed a memorandum of law (D.E. 218) and exhibits (D.E.218-1 through 218-17), plaintiffs filed a memorandum of law (D.E. 234) and exhibits (D.E.236 through D.E. 241) in opposition, and defendants filed a reply (D.E. 260) and exhibits (D.E. 260-1 through 260-7).
　　　Defendants filed a memorandum of law (D.E. 216) and exhibits (D.E. 216-1 through 216-13) in support of their motion for partial summary judgment relating to knife worker plaintiffs, plaintiffs filed a memorandum of law (D.E. 235) and exhibits (D.E 242 through D.E. 246) in opposition, and defendants filed a reply (D.E.259) and exhibits (D.E. 259-1 through 259-4).

# BACKGROUND

## I.    PLAINTIFFS' CLAIMS

In this action, plaintiffs Jerry Parker, et al. ("plaintiffs") assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., arising from their employment with defendants at their Clinton, North Carolina pork-processing facility. In their amended complaint, plaintiffs allege that defendants failed to pay them overtime for time spent engaged in donning and doffing protective equipment and related activities. (Am. Compl. (D.E. 71) ¶¶ 1, 2, 12). The specific activities for which they allege they were not compensated include: (1) obtaining their required protective equipment (including non-unique items) from designated areas in the plant; (2) walking to and from the work station, processing line, or both; (3) donning and doffing protective items and hygiene-related equipment (including non-unique items) before their shift, during their shift, and after their scheduled shift ended; (4) waiting for a shift to begin or for relief to arrive; (5) washing and cleaning tools and other equipment; and (6) other pre- and post-shift activities required by defendants. (*Id.* ¶ 12).

Plaintiffs seek unpaid back wages, unpaid benefits, liquidated damages, attorneys' fees, and other relief. (*Id.* ¶ 20). They assert their FLSA claims as a collective action, pursuant to the provisions of that statute, 29 U.S.C. § 216(b). (*Id.* ¶ 2). Both defendants generally deny plaintiffs' material allegations. (*See* Defs.' Ans. to Am. Compl. (D.E. 76, 77)).

## II.    FACTUAL BACKGROUND

### A.    Undisputed Facts

The following facts are undisputed: Defendant Premium Standard Farms, Inc. owned and operated the Clinton facility until May of 2007 when it was purchased by defendant Smithfield

2

Packing Company, Inc. (Defs.' St. of Facts re Non-Unique Items (D.E. 218-13) ¶ 1, citing Leonard Smith Dep. (D.E. 218-14) 86). The five main production areas of the facility are referred to as the kill floor, the cut floor, loin boning, ham boning, and bacon. (Defs.' St. of Facts re Non-Unique Items ¶ 5, citing Smith Dep. 177-79, 190). On the kill floor, the employees slaughter the hog and send the hog carcass to the cooler for further processing. (Defs.' St. of Facts re Non-Unique Items ¶ 5, citing Smith Dep. 177-79, 190). On the cut floor, the hog carcass is broken into smaller parts using straight knives, wizard knives, and other fixed machinery. (Defs.' St. of Facts re Non-Unique Items ¶ 5, citing Smith Dep. 177-79, 190). In loin boning, loins are removed from the carcass with knives and in ham boning, hams are removed from the carcass with knives. (Defs.' St. of Facts re Non-Unique Items ¶ 5, citing Smith Dep. 177-79, 190). In the bacon area, smoked pork bellies are sliced into bacon. (Defs.'St. of Facts re Non-Unique Items ¶ 5, citing Smith Dep. 177-79, 190).

All production employees wear some combination of protective equipment on the production floor. All employees who do not use knives generally wear a bump cap, a cloth smock, hearing protection, a disposable head net, and disposable gloves. (Defs.' St. of Facts re Non-Unique Items ¶ 6, citing Robie Simmons Dep. (D.E. 218-14) 16-17; ¶ 15, citing Bessie Mae Underwood Dep. (D.E. 218-14) 31-33; Pls.' Opp. Mem. re Knife Workers (D.E. 235) 5, citing Eddie Faircloth Dep. (D.E. 243-4) 22, Robie Simmons Dep. (D.E. 243-6) 16-17, Wilbert Tatum Dep. (D.E. 243-5) 8). Line production employees are required to wear rubber boots or shoes or covers over their shoes. (Defs.' St. of Facts re Non-Unique Items ¶ 7, citing Wanda Hardison Dep. (D.E. 218-14) 99). Employees are required to walk through a foot bath to sanitize their shoes before going to their individual workstations. (Defs.' St. of Facts re Non-Unique Items ¶ 20, citing Andrew Jordan Dep. (D.E. 218-15) 69). The sanitary clothing, including the bump cap, smock, hearing protection, head

3

net, and disposable gloves, weigh approximately 34.7 ounces in total. (Defs.' St. of Facts re Non-Unique Items ¶ 8, citing Benjamin Strickland Aff. (D.E. 216-11) 1-2). Bump caps, ear plugs, and boots are generally stored in employees' lockers. (Defs.' St. of Facts re Non-Unique Items ¶ 13, citing Michelle Drake Dep. (D.E. 218-15) 20-22). Gloves, smocks, and hairnets are obtained at the plant's supply room or other distribution points. (Defs.' St. of Facts re Non-Unique Items ¶ 14, citing Marie Smith Dep. (D.E. 218-14) 41).

At the end of the work day, cloth smocks are placed in a laundry bin. (Defs.' St. of Facts re Non-Unique Items ¶ 37, citing Underwood Dep. 40). Latex gloves are disposed of in garbage cans. (Defs.' St. of Facts re Non-Unique Items ¶ 13, citing Underwood Dep. 40).

Employees who use knives wear some combination of a cut-resistant glove, arm guard, belly guard, scabbard, and steel in addition to the items worn by non-knife users.[2] (Defs.' St. of Facts re Knife Workers (D.E. 216-9) ¶ 6, citing Les Nemec Dep. (D.E. 216-10) 15, 19; Pls.' Opp. Mem. re Knife Workers 5, citing Wanda Hardison Dep. (D.E. 218-14) 14-16, 17-18). In addition, some knife workers also wear a hard plastic arm guard. (Defs.' St. of Facts re Knife Workers ¶ 10, citing Hardison Dep. 29). Cut-resistant gloves, arm guards, belly guards, scabbards, and steels may be donned and doffed at each employee's work station. (Defs.' St. of Facts re Knife Workers ¶ 10, Hardison Dep. 29). At the end of their shift, knife workers rinse their steel mesh gloves and arm guards. (Defs.' St. of Facts re Knife Workers ¶ 21, citing Drake Dep. 44.).

Clinton employees are generally paid in "gang time." (Defs.' St. of Facts re Non-Unique Items ¶ 42, citing Frederick Carlton Honeycutt Dep. (D.E. 218-15) 42-44, Simmons Dep. 44-45).

---

[2] The belly guard is strapped around an employee's midsection and is a rectangular piece of plastic or vinyl. A scabbard is worn on a chain and strapped around an employee's waist and is used to hold a sharpened knife. A steel is a round steel rod with a plastic handle that can be used to straighten the edge of a knife. (Defs.' St. of Facts re Knife Workers ¶ 6 n.2-5).

4

The end of gang time is determined by the manager of the particular department based on when the last hog reaches a designated point in the production line. (Defs.' St. of Facts re Non-Unique Items ¶ 42, citing Honeycutt Dep. 42-44, Simmons Dep. 44-45).

In addition to this compensation, before March 2006, production line employees at the Clinton plant were paid an additional six minutes' wages a day for donning and doffing activities. (Defs.' Mem. re Non-Unique Items (D.E. 218) 2 n.2, citing Smith Dep. 40-41). After March 2006, however, defendants began paying all employees for additional minutes, ranging between 3 and 27 minutes per day, dependent upon the employee's job location and type of job the employee has. (Defs.' Mem. re Non-Unique 2 n.2, citing Smith Dep. 43-46, 69-71). The determination of the compensation paid to each employee, known as "plug time," varies based upon the type of protective equipment worn, any required post-shift washing or pre-shift sanitizing activities, and the location of the employee's work station and locker. (Defs.' Mem. re Non-Unique Items 2 n.2, citing Smith Dep. 45-48, 69-72).

### B. Disputed Facts

When the employees obtain and put on some of their protective equipment, which items are required, and the precise order they are donned, is disputed by the parties. For example, plaintiffs contend that plastic sleeves are required to be worn by employees. (Pls.' Opp. Mem. re Non-Unique Items (D.E. 234) 5, citing Eddie Faircloth Dep. (D.E. 237-1) 22, Simmons Dep. 16-17, Tatum Dep. 8, 12-20). Defendants contend that employees are not required to wear sleeves and that they are worn as a matter of choice. (Defs.' Reply St. of Facts re Non-Unique Items (D.E. 260-3) 1-2, citing Underwood Dep. 31-32). Similarly, plaintiffs maintain that an apron is required (Pls.' Opp. Mem. re Non-Unique, citing Simmons Dep. 63-64), but defendants contend that an apron is optional

5

(Defs.' Reply St. of Facts re Non-Unique Items 3-4, citing Simmons Dep. 63, Underwood Dep. 31-32). Plaintiffs contend that the unique personal protective equipment is worn over the layer of non-unique sanitary items (Pls.' Opp. Mem. re Non-Unique Items 9), whereas defendants contend that it varies by employee (Defs.' Reply St. of Facts re Non-Unique Items 12).

During breaks, defendants contend that non-knife workers remove their gloves and cloth smocks (Defs.' St. of Facts re Non-Unique Items ¶ 27, citing Underwood Dep. 37-38), but keep bump caps, head nets, ear plugs, and shoes on (Defs.' St. of Facts re Non-Unique Items ¶ 29, citing Underwood Dep. 37-38). They further maintain that cloth smocks are hung in the work area and latex gloves may be left in the department. (Defs.' St. of Facts re Non-Unique Items ¶¶ 27, 28, citing Underwood Dep. 37, Tyrone Robinson Dep. (D.E. 218-15) 55-56, Drake Dep. 30). Plaintiffs dispute this and contend that all production employees must doff all personal protective equipment during their meal break. (Pls.' Opp. Mem. re Non-Unique Items 10, citing Faircloth Dep. 28, Simmons Dep. 35).

Defendants also argue that during breaks, employees do not need to wash any sanitary or protective items. (Defs.' St. of Facts re Knife Workers ¶ 16, citing Hardison Dep. 33, Tyrone Robinson Dep. (D.E. 216-10) 55, Frederick Carlton Honeycutt Dep. (D.E. 216-10) 39, Marie Smith Dep. (D.E. 216-10) 52). They maintain that employees may leave durable items including scabbards, cutting gloves, arm guards, and belly guards, as well as aprons, at their work stations during a break. (Defs.' St. of Facts re Knife Workers ¶ 19, citing Hardison Dep. 38, 42, Michelle Drake Dep. (D.E. 216-10) 37, Honeycutt Dep. 38–39). Plaintiffs insist that all employees are required by defendants to wash their personal protective equipment during their meal breaks. (Pls.' Opp. Mem. re Non-Unique Items 11, citing Defs.' Cleaning of PPE Instructions (D.E. 238-4) 1).

6

Plaintiffs also contend that knife workers must steel their knives during breaks. (Pls.' Opp. Mem. re Non-Unique Items 11, citing Hardison Dep. 79, Drake Dep. 64, Tatum Dep. 99). Defendants dispute this contention. (Defs.' Reply St. of Facts re Non-Unique Items 15, citing Faircloth Dep. 29). While plaintiffs suggest that some employees were required to steel their knives in the cafeteria (Pls.' Opp. Mem. re Non-Unique Items 11, citing Harding Dep. 43), defendants argue that doing so is a matter of personal preference (Defs.' Reply St. of Facts re Non-Unique Items 15-16, citing Faircloth Dep. 30).

In addition, plaintiffs present evidence regarding the purpose that non-unique sanitary[3] and personal safety equipment serve.[4] Defendants contend that the testimony demonstrated that wearing protective equipment is part of mandatory standard operating procedures to keep employees safe. (Defs.' Reply St. of Facts re Non-Unique Items 3, citing Faircloth Dep. 20, Hardison Dep. 62, Tatum Dep. 58-59). Plaintiffs note that defendants and government regulations require employees to wear the non-unique gear. (Pls.' Opp. Mem. re Non-Unique Items (D.E. 234) 3, citing Frederick Carlton Honeycutt Dep. (D.E. 236-2) 13-14, 16-19). They further note that defendants have enacted or adhere to Standard Sanitary Operations Procedures. (Pls.' Opp. Mem. re Non-Unique Items 3, Exhibit 4 (D.E. 236-4)). Plaintiffs identify the following reasons that employees are required to wear the non-unique gear: frocks/smocks are required to keep dye and lint off the pork product (Pls.' Opp. Mem. re Non-Unique Items 3, citing Faircloth Dep. (D.E. 237-1) 21, Wanda Hardison Dep. (D.E. 240-2-3) 14, 86); aprons prevent smock fibers from getting on the product (Pls.' Opp. Mem. re Non-

---

[3] Plaintiffs' object to the term "non-unique" personal protective equipment as misleading and refer to it instead as sanitary personal protective equipment.

[4] Defendants do not expressly contradict most of plaintiffs' evidence on this point, but contend that the purpose served by the equipment is irrelevant. (Defs.' Reply Mem. re Non-Unique Items (D.E. 260) 2-3).

7

Unique Items 3, citing Simmons Dep. 68); hairnets are required to keep employees' hair off the product (Pls.' Opp. Mem. re Non-Unique Items 4, citing Faircloth Dep. 20-21, Hardison Dep. 86); gloves present human skin from touching the product (Pls.' Opp. Mem. re Non-Unique Items 4, citing Hardison Dep. 86); boots/steel-toed shoes prevent outside contaminants and subject an employee to discipline if not worn (Pls.' Opp. Mem. re Non-Unique Items 4, citing Hardison Dep. 99); bump caps/helmets/hats prevent contamination of the pork product (Pls.' Opp. Mem. re Non-Unique Items 4, citing Christopher Jiles Dep. (D.E. 237-2) 21); plastic sleeves keep lint off of the product (Pls.' Opp. Mem. re Non-Unique Items 4, citing Simmons Dep. 67).

Each employee is required to agree to and sign the following statement:

I understand that personal protective equipment is provided free of charge to me and that PPE is required for certain specific job tasks. I also agree that I will be responsible for properly wearing PPE as required to conduct a job/task. I will also inspect my PPE and keep it clean and sanitary.

(Pls.' Opp. Mem. re Knife Workers (D.E. 235) 3, citing Safety Handbook (D.E. 242-4)). Employees are also provided with an employee handbook containing ten "Good Manufacturing Practices" concerning the protection of the pork product. (Pls.' Opp. Mem. re Knife Workers 3-4, citing Employee Handbook (D.E. 242-4) 6).

## DISCUSSION

By their two motions, defendants seek partial summary judgment dismissing (1) all claims for overtime pay based on time spent donning and doffing, obtaining, and discarding non-unique items, and pre- and post-shift and pre- and post-break walking and waiting; and (2) all claims for overtime pay based on time spent by knife workers before donning unique cut-protective items and after doffing and washing such items (including obtaining, carrying, and depositing such items), walking, and waiting, and for imposition of any requirement that defendants measure individual time

8

spent in compensable pre- and post-production activities. Before undertaking a discussion of each motion, the court will review applicable principles of law under Rule 56 and the FLSA.

## I.     APPLICABLE LEGAL PRINCIPLES

### A.     Summary Judgment Standard

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

9

Rule 56(a) permits the court to grant summary judgment "with respect to all claims in an action or only some claims in a multiple claim action." *Evergreen Intern., S.A. v. Marinex Const. Co., Inc.*, 477 F. Supp. 2d 697, 699 (D.S.C. 2007). A motion for partial summary judgment "utilizes the same standards required for consideration of a full motion for summary judgment." *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994). However, a party is not entitled to partial summary judgment unless such judgment would be dispositive of an entire claim. *Evergreen*, 477 F. Supp. 2d at 699. The "piecemealing" of select elements on a single claim is not permitted by Rule 56. *Id.* Further, "partial summary judgment is properly withheld where, on the basis of the cold record, a considerable expenditure of judicial time and effort will be required 'to sift out and piece together the undisputed facts essential to a summary judgment.'" *Toyoshima Corp. of California v. Gen. Footwear, Inc.*, 88 F.R.D. 559, 560 (S.D.N.Y. 1980) (quoting *Perma Research & Dev. Co. v. Singer Co.*, 308 F. Supp. 743, 750 (S.D.N.Y. 1970)). "In a complex fact-intensive case . . . , a court has discretion to deny a partial summary judgment, even if such is justified, in order to proceed more efficiently and more expeditiously with a definitive resolution." *Ryste & Ricas, Inc. v. United States*, 50 Fed. Cl. 85, 90 (2001). "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." *Kennedy v. Joy Tech., Inc.*, 269 Fed. Appx. 302, 308 (4th Cir. 2008).

**B.    FLSA**

The FLSA requires employers to compensate employees for hours worked, which includes each hour an employee is employed, as well as overtime for hours worked in excess of forty hours per week. *See* 29 U.S.C. §§ 206, 207. Specifically, it provides in relevant part:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or the production of goods for commerce . . . for a workweek longer

10

than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA does not, however, define what is considered "work" time. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).

The Supreme Court initially defined work broadly and included all time that an employee is on his employer's premises, on duty, or at a designated workplace, which included, among other things, "the time necessarily spent by employees walking from time clocks near the factory entrance gate to their workstations." *Alvarez*, 546 U.S. at 26 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-92 (1946)). The concept of the "continuous workday," meaning that the workday includes "the period between the commencement and completion of the same workday of an employee's principal activity or activities," was also established. 29 C.F.R. § 790.6(b); *Alvarez*, 546 U.S. at 29 (noting that the continuous workday rule and regulations to that effect have been in place since 1947).

In response to the broad judicial interpretations of the FLSA, Congress enacted the Portal-to-Portal Act, 61 Stat. 84, which narrowed the reach of the FLSA by excluding two activities that had been deemed compensable under Supreme Court precedent:

(1)     walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and

(2)     activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

11

29 U.S.C. § 254(a)(1), (2). Other than these two exceptions, the Portal-to-Portal Act did not alter prior Supreme Court holdings on what constitutes "work," a "workweek," or a "workday." *Alvarez*, 546 U.S. at 28.

While activities that are preliminary or postliminary to an employee's principal activities are therefore by statute generally non-compensable, such activities are compensable if they are determined to be "an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see also* 29 C.F.R. § 790.8(b), (c) (defining "principal activity" to include activities that are an integral part of a principal activity and indispensable to its performance).

More recently, in 2005, the Supreme Court further refined the scope of the activities deemed compensable under the FLSA and the Portal-to-Portal Act. *Alvarez,* 546 U.S. at 30. In *Alvarez*, the court reviewed consolidated cases involving employees of meat and poultry processing plants who brought FLSA claims against their employers. The employees were required to wear certain items of protective gear that they donned and doffed on company property prior to walking to the production floor. *Id.* The Court considered whether the employers were required to compensate the employees for time spent donning and doffing protective gear, walking between the locker rooms and production areas, or waiting to don or doff at the start and end of their workday. *Id.* at 31.

The *Alvarez* court confirmed that if a preliminary activity is integral and indispensable to an employee's principal activity, then the activity itself is a principal activity. *Id.* at 37. It further held that those preliminary activities deemed to be integral and indispensable to the principal activity trigger the start of the workday under the continuous workday rule.[5] *Id.* at 33; *see also Jordan v.*

---

[5] In the instant case, plaintiffs contend that their compensable workday begins when they first don the non-unique sanitary protective equipment. (Pls.'Opp. Mem. re Non-Unique Items 20). Defendants disagree that donning

*IBP, Inc.*, 542 F. Supp. 2d 790, 802 (M.D. Tenn. 2008) ("Once an employee engages in a principal activity—or in an activity that is integral and indispensable to a principal activity—the workday has begun and, under the continuous workday rule, that activity and any subsequent activities in which the employee engages prior to the end of the workday are compensable, even if those activities would otherwise be excluded from coverage by the Portal-to-Portal Act."). It noted that "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity.'" *Alvarez*, 546 U.S. at 40-41. Thus, by concluding that the locker rooms where the donning and doffing of safety gear occurred were the relevant place of performance of the first principal activity, the Court decided that pre-donning walking to the locker rooms was excluded from FLSA coverage, but that post-donning walking from the locker rooms to another area within the plant was compensable under the continuous workday rule. 546 U.S. at 34, 37; *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 517 (D. Md. 2009) ("Thus, under the 'continuous work day' rule, any activity—donning and doffing, walking, waiting, sanitizing—undertaken by the employee after the work day has begun is compensable."). It similarly held that time spent waiting to don the first piece of gear that marks the start of the continuous workday is excluded from coverage under the FLSA. 546 U.S. at 42.

Therefore, not all work-related tasks are considered work under the FLSA, and the court must determine if the activity is a principal one or integral and indispensable to a principal activity. *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 358 (E.D.N.Y. 2009). "'Whether an activity is preliminary or postliminary to [the] principal activities . . . is a mixed question of law and fact

---

any non-unique gear can be considered an integral and indispensable activity.

because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law.'" *Jackson v. BECCM Co., Inc.*, No. 3:09cv00054, 2010 WL 56077, at *4 (W.D. Va. 5 Jan. 2010) (quoting *Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1216 (10th Cir. 1998)). The Fourth Circuit recently noted that "[i]t is an open question in this circuit whether donning and doffing protective gear is a preliminary or postliminary activity or 'integral and indispensable' to the principal activity of poultry processing." *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 214 (4th Cir. 2009).

The assessment of principal activities and the integral and indispensable parts of such principal activities involves consideration of "'whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business.'" *Jackson*, 2010 WL 56077, at * 4 (quoting *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)); 29 C.F.R. § 790.8(a) (defining a "principal activity" as those activities that the employee is employed to perform). Where not deemed to be "'integral and indispensable activities, preliminary or postliminary activities are activities spent predominantly in the employees' own interests.'" *Id.* (quoting *Truslow v. Spotsylvania Cnty. Sherriff*, 783 F. Supp. 274, 278 (E.D. Va. 1992)).

While there does not appear to be a uniformly applied test[6] to determine whether an activity is integral and indispensable and thus compensable, courts may consider the following factors: whether the activity is required by the employer; whether it is necessary to the performance of the

---

[6] Some courts first make a finding as to whether the donning and doffing can be considered "work," with work being defined as activity that requires physical or mental exertion and controlled or required by the employer and pursued for the benefit of the employer. *DeAsencio v. Tyson Foods, Inc.*, 500 F.3d 361, 370-71 (3d Cir. 2007) ("Activity must be 'work' to qualify for coverage under the FLSA, and that 'work,' if preliminary or postliminary, will still be compensable under the Portal-to-Portal Act if it is 'integral and indispensable' to the principal activity."). Next, they go on to consider if the activities are integral and indispensable, *i.e.*, "necessary to the principal work performed and done for the benefit of the employer." *Bamonte v. City of Mesa*, 598 F.3d 1217, 1225 (9th Cir. 2010) (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-03 (9th Cir. 2003)).

employee's duties; and whether the activity primarily benefits the employer or the employee. *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007); *In re Tyson Foods*, 694 F. Supp. 2d 1358, 1363 (M.D. Ga. 2010) (citing *Bonilla*, 487 F.3d at 1344; *Perez v. Mountaire Farms, Inc.*, 601 F. Supp. 2d 670, 675-76 (D. Md. 2009) (same).

## II.    NON-UNIQUE ITEMS

As noted, defendants seek partial summary judgment on the issue of whether donning and doffing non-unique equipment, and the related activities of obtaining and discarding it and the associated walking and waiting are compensable. Defendants seek this relief by express reference to non-unique equipment, which they identify for purposes of this case as the bump cap, smock, ear plugs or ear muffs, head net, disposable gloves, plastic sleeves, and rubber boots or shoes or shoe covers. Plaintiffs eschew the distinction between non-unique and unique equipment in their theory of the case. The court will first address the donning and doffing of non-unique items and then turn to other activities relating to them.

### A.    Donning and Doffing Non-Unique Items

The determination whether donning and doffing of non-unique items is compensable hinges on whether such activities are integral and indispensable to the employees' principal activities. This issue was not resolved by the Supreme Court in *Alvarez*.[7]

Defendants assert that the donning and doffing of non-unique items is not integral and indispensable to an employee's principal activities and is therefore non-compensable as a matter of law. Defendants do not dispute that they require employees to don the non-unique gear at issue

---

[7] This issue was not before the *Alvarez* Court because the circuit court held that the time spent donning and doffing such items was de minimis as a matter of law and plaintiffs did not appeal that aspect of the decision. 546 U.S. at 32.

15

before beginning work on the production floor, but contend that that fact alone does not make the gear integral and indispensable. Several circuit courts have reached this conclusion. *See, e.g., Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 454 (5th Cir. 2009) ("[D]onning and doffing of generic protection gear such as safety glasses and hearing protection, are in any event 'non-compensable, preliminary tasks' under the Portal-to-Portal Act."); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126-27 (10th Cir. 1994).

Specifically, in *Gorman*, plaintiffs in a nuclear power station facility sought compensation for time spent donning and doffing helmets, safety glasses, and steel-toed boots. The court held that the items were necessary and thus indispensable to their work, but not integral to or intertwined with the actual work they were hired to perform. *Gorman*, 488 F.3d at 594. The Second Circuit reasoned that the "donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation" and noted that the tasks in question were relatively effortless, preliminary tasks. *Id.*

Similarly, in *Reich*, the Tenth Circuit held that meat-processing workers who donned and doffed standard or non-unique items of protective equipment, including a hard hat, boots, safety glasses, or ear plugs, were not entitled to be compensated for that time under the FLSA. 38 F.3d at 1126-27. The *Reich* court concluded that such tasks did not constitute "work" under the FLSA since it took the employees all of a few seconds to do and required little to no concentration. *Id.* While *Reich* preceded *Alvarez*, many courts have continued to follow it and its reasoning in similarly concluding that even where required, donning and doffing non-unique standard items is not integral and indispensable to an employee's principal job duties. *Haight v. The Wackenhut Corp.*, 692 F.

16

Supp. 2d 339, 345 (S.D.N.Y. 2010) (donning and doffing hard hats, safety glasses, steel-toed boots, gun holster, and inclement weather gear by security officers at nuclear power plant were not integral to principal activities); *Alford v. Perdue Farms, Inc.*, No. 5:07-cv-87, 2008 WL 879413, at *6 (M.D. Ga. 28 Mar. 2008) (awarding summary judgment to employer in finding that poultry processing employees' donning and doffing of hairnets, beard nets, goggles, ear plugs, boots, and bump caps was preliminary and postliminary).

Plaintiffs counter that the court should reject *Reich* and similar decisions, and maintain that *Alvarez* has undermined any continuing persuasive value that *Reich* may possess.[8] Because the *Alvarez* court reaffirmed that "'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA," 546 U.S. at 25 (citing *Armour v. Wantock*, 323 U.S. 126 (1944)), plaintiffs contend that any finding on the ease with which these items may be donned or doffed, a factor considered in *Reich*, does not diminish their character as integral and indispensable.

Other courts have found arguments similar to those made by plaintiffs to be persuasive. *See, e.g., In re Cargill Meat Solutions*, 632 F. Supp. 2d 368, 378 (M.D. Pa. 2008) ("[I]t is concluded that the time Plaintiffs spent donning, doffing, gathering, maintaining, and sanitizing work-related gear and equipment and the time spent traveling between the changing area and the production line, before and after shifts and during break times, is compensable under the FLSA and the Portal-to-Portal Act."); *DeAscencio*, 500 F.3d at 372 (finding that donning and doffing of safety

---

[8] Indeed, several courts have questioned whether the *Reich* case is still good law following the Supreme Court's decision in *Alvarez*. *See, e.g., Perez*, 601 F. Supp. 2d at 678 ("*Reich* was decided before the Supreme Court affirmed *Alvarez*, so its persuasiveness is not compelling."); *Jordan*, 542 F. Supp. 2d at 803-04 ("The persuasive effect of the *Reich* decision is extremely limited, however, as it was issued before the Supreme Court's decision in *Alvarez*, which clarified that exertion is not required for an activity to be compensable under FLSA."); *Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1246 (D. Kan. 2007) (stating it was "convinced that the [Tenth] Circuit, if given the opportunity to revisit the at issues in *Reich* would approach its analysis of the pertinent issues differently in light of *Alvarez*, regardless of whether the Circuit ultimately reached the same conclusions regarding compensability").

glasses, earplugs, boots, smocks, and hairnets constitutes "work" as a matter of law and jury instruction stating that exertion was required was in error); *Garcia*, 474 F. Supp. 2d at 1247 (denying summary judgment and holding that time spent donning and doffing standard protective clothing at beef processing plant was not excluded from compensability under the FLSA).

After careful consideration of the relevant authorities and the present record in this case, the court finds that there are disputed issues of fact relating to the factors the court needs to consider in determining whether the donning and doffing of non-unique items is integral and indispensable to plaintiffs' primary activities. One relevant factor is whether an item can be donned at home or at various times. *See Bamonte*, 598 F.3d at 1225-26 (noting that the fact that the protective gear could be donned at home typically rendered the activity not compensable); *Musticchi v. City of Little Rock*, No. 4:08CV419, 2010 WL 3327998, at *3-4 (E.D. Ark. 24 Aug. 2010) (holding donning and doffing to be non-compensable since neither law nor employer required it to be done on premises); *Perez*, 610 F. Supp. 2d at 519 (finding that donning and doffing of protective gear was compensable notwithstanding employees' option to take it home where they were "required by law, policy, and the nature of the work to don and doff their [gear] at work"); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 903 (9th Cir. 2004) (holding that employees were required to change into uniforms on premises and forbidden to wear them home weighed heavily in favor of finding the donning and doffing time compensable). The record here suggests that the gear is all largely donned on-site, a factor the court can consider, and one which weighs against allowing summary judgment in defendants' favor. (*See* Defs.' St. of Facts re Non-Unique Items 7, 13, citing Hardison Dep. 99, Drake Dep. 20; Pls.' Opp. Mem. re Non-Unique Items 20, citing Hardison Dep. 14-17, Tatum Dep. 60-62, King Dep. 71-72, Drake Dep. 55-56).

18

Another relevant factor is whether the employer or the employees are the primary beneficiaries of donning and doffing the non-unique items. *See Johnson v. Koch Foods*, 670 F. Supp. 2d 657, 669-70 (2009) ("The proof in the record demonstrates that both plaintiffs and Koch Foods are deriving benefits from these activities [of donning and doffing sanitary gear]. As such, there is a material issue of fact as to which party receives the primary benefit from the washing and the donning and doffing of the required and optional protective items. Therefore, summary judgment is inappropriate on whether these are integral and indispensable activities."). Here, both sides contend that the other reaps the primary benefit of these non-unique items. Plaintiffs have developed ample evidence making it plausible that maintaining a sanitary environment during pork processing is intertwined with the work they were hired to perform and therefore that donning and doffing the non-unique items is integral and indispensable, in contrast to cases where the items are donned and donned solely for employee comfort or protection. The evidence of record cited by the parties does not establish as a matter of law which side is correct. (*See* Defs.' Reply St. of Facts re Non-Unique Items 3, citing Faircloth Dep. 20, Hardison Dep. 62, Tatum Dep. 58-59; Pls.' Opp. Mem. re Non-Unique Items 3, citing Honeycutt Dep. 13-14, 16-19, Faircloth Dep. 21, Hardison Dep.14, 86).

Finally, it is unclear from the present record whether all of the items identified by defendants as non-unique are entitled to the same treatment. It is conceivable that some of the non-unique items may be deemed integral and indispensable while others may not. It is also unclear from the record if the items must be donned in one particular order or whether some items, like the disposable smock, could always be donned last among these non-unique items.

In light of the disputed facts, the court cannot determine as a matter of law whether the donning and doffing of the non-unique equipment is integral and indispensable to plaintiffs'

19

principal activities. Other courts have reached the same conclusion under very similar facts. *See In re Tyson Foods, Inc.*, 694 F. Supp. 2d at 1365-66 ("[T]he Court concludes that genuine issues of material fact exist as to whether the donning, doffing, and sanitizing activities are 'integral and indispensable' to Plaintiffs' primary activities."); *Helmert v. Butterball, Inc.*, No. 4:08CV342, 2009 WL 5066759, at *12 (E.D. Ark. 15 Dec. 2009) ("The Court will not hold as a matter of law that donning and doffing is not integral and indispensable to the principal activities of processing turkeys simply because the items donned are not unique."); *Perez*, 601 F. Supp. 2d at 679-81 (holding that issues of fact precluded summary judgment on issue of whether poultry employees' donning and doffing of sanitary gear was integral and indispensable); *Gortat*, 257 F.R.D. at 360 (finding issues of fact on when and where the workday started so as to preclude summary judgment on construction workers' FLSA claims); *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1316-17 (N.D. Ala. 2008) (finding genuine issue of material fact existed as to whether employer received primary benefit from donning, doffing, and sanitizing activities by chicken processing employees). Accordingly, this aspect of defendants' motion for partial summary judgment should be denied.

**B.     Other Related Activities**

The court turns now to the compensability under the FLSA of the pre-donning obtaining and post-doffing discarding of the non-unique items of equipment and pre- and post-shift and pre- and post-break walking and waiting. As indicated, defendants seek summary judgment with respect to these activities.

Obviously, if the court ultimately concludes that the donning and doffing of the non-unique items is non-compensable, then these related activities would also be non-compensable. The related

activities would be preliminary and postliminary and not integral and indispensable to plaintiffs' principal activities.

Not stopping the analysis there, defendants argue that even if the donning and doffing of these items is deemed compensable, time for the pre-donning obtaining and post-doffing discarding of them would be non-compensable as preliminary and postliminary activities, respectively, that are not integral and indispensable to plaintiffs' principal activities. The court agrees in part.

*Alvarez* provides useful guidance. In it, as discussed, the Supreme Court concluded that the employees' place of performance of the principal activity was in the locker room where the safety gear was donned and doffed. 546 U.S. at 34. The Court excepted from compensable time the time it took the plaintiffs to walk to the locker rooms, pursuant to 29 U.S.C. § 254(a)(1). *Id.* It excluded the time spent waiting to don the first piece of gear as an activity that was preliminary in nature, pursuant to 29 U.S.C. § 254(a)(2). *Id.* at 42. Similarly, here, the act of obtaining the non-unique gear pre-donning and discarding it post-doffing are, respectively, preliminary and postliminary in nature.

Notably, the mere act of carrying an item (even where donning that item is compensable) does not make the time compensable. Instructive on this point are the FLSA regulations providing that time carrying or transporting equipment and tools becomes compensable when it is so burdensome that it is not segregable from the performance of assigned work. *See* 29 C.F.R. § 790.7(d). The regulations give as an example of compensable activity a logger's carrying a heavy saw to the woods and contrasts it with the non-compensable activity of his carrying ordinary hand tools. *Id.* ("An illustration of such travel would be the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to

21

the cutting area. In such a situation, the walking, riding, or traveling is not segregable from the simultaneous performance of his assigned work (the carrying of the equipment, etc.) and it does not constitute travel 'to and from the actual place of performance' of the principal activities he is employed to perform."). Here, defendants have presented evidence that the items weigh a total of 35 ounces and therefore that carrying them is not burdensome. (*See* Defs.' St. of Facts re Non-Unique Items ¶ 8, citing Benjamin Strickland Decl. (D.E. 218-16) ¶¶ 3, 4). This fact substantiates that the non-unique gear is more akin to the ordinary hand tools in the example in the regulations and that obtaining and discarding the non-unique gear is segregable from the performance of plaintiffs' work.

Even though the pre-donning obtaining and post-doffing discarding of the non-unique items is, respectively, preliminary and postliminary in nature, they still could be compensable if determined to be part of the continuous workday. The record establishes that the pre-donning obtaining of the non-unique items is not part of the continuous workday. The record shows no principal activities of plaintiffs preceding the obtaining of the items. In particular, because the unique gear is donned after the non-unique gear, the donning of the unique gear does not make the obtaining of the non-unique gear compensable as part of the continuous workday.

The same conclusion cannot be reached with respect to the post-doffing discarding of the non-unique gear. Based on the present record, it is possible that principal activities may follow the discarding of the non-unique items and therefore that such discarding would be part of the continuous workday. Specifically, the record shows that the doffing of some unique items of equipment, which activity may qualify as a principal activity, could occur after the discarding of the non-unique items.

22

Accordingly, the court concludes that the pre-donning obtaining of the non-unique gear, but not the post-doffing discarding of it, is not compensable under the FLSA as a matter of law. *Jordan*, 542 F. Supp. 2d at 810 (holding that while donning and doffing protective frock was compensable under the continuous workday rule, "other preliminary and postliminary activities that precede or follow the donning and doffing—such as retrieving, exchanging, and stowing—are not compensable, as they are not integral and indispensable to the plaintiffs' principal activities"). This aspect of defendants' motion should accordingly be allowed, and the claims for the pre-donning obtaining of the non-unique gear should be dismissed.

The remaining question is whether the time for pre- and post-shift and pre- and post-break walking and waiting is compensable. Defendants argue that the walking time is non-compensable because the plaintiffs' place of performance is their respective job station on the production floor and the walking time falls squarely within the Portal-to-Portal Act exclusion for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S. C. § 254(a)(1). The waiting time is purportedly excluded as a preliminary and postliminary activity that is not integral and indispensable to plaintiffs' primary activity. Comparable arguments are made with respect to break-related walking and waiting. Because the court has determined that there are issues of fact as to whether donning and doffing particular items of non-unique protective gear is or is not compensable, as well as issues of fact as to when and where those items are donned and doffed, some pre- and post-shift and pre- and post-break walking and waiting time sought to be excluded on this motion may be compensable. Accordingly, summary judgment on this point should be denied.

23

## C. Requirement to Measure Individual Time

Finally, defendants argue that the court should enter summary judgment dismissing any claim by plaintiffs that the FLSA prohibits defendants from using a gang time method and requires defendants to measure each individual employee's time spent on compensable pre- and post-production activities (not limited to those relating to non-unique items) and that defendants are not permitted to set compensation for these activities based on a uniform reasonable amount of time. Defendants cite substantial authority for their position and it appears to conform with applicable law. *See, e.g., Anderson v. Cagle's Inc.*, 488 F.3d 945, 949-50 (11th Cir. 2007); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 900 (9th Cir. 2003); *Perez*, 601 F. Supp. 2d at 672; *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1003-04 (W.D. Tenn. 2008); *Burks v. Equity Group-Eufaula Div.*, 571 F. Supp. 2d 1235, 1245 (M.D. Ala. 2008); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687, 690 (S.D. Miss. 2008); *Anderson*, 147 F. Supp. 2d at 560-61. Plaintiffs clarify that they do not question the legality of a gang time pay system, but rather contest the factual determination by defendants regarding which tasks are compensable. There being no opposition on the particular point presented by defendants' motion, it should accordingly be allowed and, to the extent that it appeared that plaintiffs were alleging a claim that each individual's time for the activities in question must be measured, the claim should be dismissed.

## III. KNIFE WORKERS' CLAIMS

As indicated, defendants also seek summary judgment dismissing various claims of plaintiffs who use knives. More specifically, defendants seeks dismissal of knife worker plaintiffs' claims for: (1) time spent obtaining, carrying, and depositing unique items of protective gear (*i.e.*, cut-resistant gloves, mesh gloves, belly guard, plexiglas arm guard, scabbard, and steel) and walking pre-donning

24

and post-doffing and post-washing such gear; (2) time spent waiting pre-donning, post-doffing, and for washing; and (3) imposition of any requirement that defendants measure individual time spent in compensable pre- and post-production activities. For purposes of their motion only, defendants concede that the donning, doffing, and washing of the unique protective items in question are principal activities compensable under the FLSA. (Defs.' Knife SJ Mem. (D.E. 216) 2). It is also notable that plaintiffs are required to wear the unique protective gear only while on the production floor and that knife worker employees generally don and doff such items right at their work stations. (*Id.* 10; Pls.' Opp. Knife Mem. (D.E. 235) 7).

### A. Obtaining, Carrying, and Depositing Unique Items, and Pre-Donning and Post-Doffing and Post-Washing Walking Time

Defendants seek dismissal of the knife workers' claims for time spent obtaining unique equipment, carrying it, and walking before donning it, arguing that such time is not compensable because such activity is preliminary, and not integral and indispensable to the knife workers' principal activities. Defendants make comparable arguments regarding time spent carrying unique equipment, walking, and depositing it after it is doffed and/or washed, contending that this time is postliminary. Defendants' contentions apply to these activities whether they are pre- or post-shift or pre- or post-break.

Defendants rely, most persuasively, on *Alvarez* for their contentions. As discussed, the Supreme Court there deemed the place of performance of the first principal activity to be in the locker rooms and therefore excluded from compensation the time that employees spent walking to the locker rooms before donning the items in question. 546 U.S. at 34. The court also excluded the time spent waiting to don the first piece of gear as preliminary. *Id.* at 42.

25

Drawing on these principles and for the same reasons discussed with respect to the comparable activities involving non-unique items, the court agrees with defendants that time spent by plaintiffs obtaining and carrying unique gear and walking before donning it, and time spent carrying it, walking, and discarding it post-doffing and/or post-washing (even as to gear that when donned or doffed is compensable) is preliminary and postliminary, respectively, in nature. *Jordan*, 542 F. Supp. 2d at 810. As with the non-unique gear, the unique gear at issue weighs relatively little, less than 72 ounces, which substantiates that it is not so burdensome as to be non-segregable from the employees' primary activities. (Defs.' St. of Facts re Knife Workers ¶ 30, citing Benjamin Strickland Decl. (D.E. 216-11) ¶ 3).

However, in this instance, the fact that this activity is preliminary and postliminary in nature does not necessarily render time spent on it non-compensable. Resolution of that issue ultimately depends on the court's finding as to whether the donning and doffing of non-unique gear is compensable. If donning the non-unique gear is deemed integral and indispensable and thereby compensable, and if knife workers obtain their unique protective equipment *after* they don the non-unique items, then the time spent obtaining the unique protective equipment, carrying it, and walking before donning it would be compensable under the continuous workday rule. An analogous rationale would apply to the comparable post-doffing and post-washing activities. Accordingly, because there are genuine issues of material fact on the question of whether donning and doffing the non-unique gear is integral and indispensable, the court cannot rule as a matter of law on whether obtaining, carrying, or discarding the unique protective gear worn by knife workers and the associated walking is compensable. The portion of defendants' motion seeking dismissal of the knife workers' claims for time spent on such activities should accordingly be denied.

26

## B. Pre-Donning and Post-Doffing and Washing Wait Time

Next defendants argue that *Alvarez* stands for the proposition that time spent waiting pre-donning, post-doffing, and for washing, whether pre- or post-shift, or pre- or post-break, is not compensable. While the court agrees that this time is preliminary or postliminary in nature, because the issue of whether the donning and doffing of certain items is integral and indispensable cannot be resolved as a matter of law, the court is similarly unable to conclude at present that all pre-donning, post-doffing, and washing wait time is not compensable as a matter of law. As with the obtaining, carrying, discarding, and related walking just discussed, it is possible that if the donning and doffing of non-unique gear is ultimately deemed compensable, then the wait time involved before donning and after doffing the knife workers' unique protective gear, as well as wait time associated with washing the gear, would be compensable under the continuous workday rule. Accordingly, this aspect of defendants' motion should be denied as well.

## C. Requirement to Measure Individual Time

Finally, defendants again argue that the court should enter summary judgment dismissing any claim by plaintiffs that the FLSA requires defendants to measure each individual employee's time spent on compensable pre- and post-production activities (not limited to those relating to unique items) and that defendants are not permitted to set compensation for these activities based on a uniform reasonable amount of time. Again, plaintiffs respond that a determination of "reasonableness" is a factual issue for the jury. The court agrees. It notes, however, that defendants' motion does not seek a determination that the amount of the compensation paid was reasonable as a matter of law,[9] but merely that their system of paying a specified fixed amount in

---

[9] The court also notes that although plaintiffs argue that whether or not the donning and doffing of sanitary protective equipment is de minimis is an issue of fact (*see* Pls.' Mem. Opp. re Knife Workers (D.E. 235) 23-26), this

addition to gang time is in and of itself permissible. For the same reasons set forth above, this aspect of the motion should accordingly be allowed and, to the extent that plaintiffs are alleging a claim that each individual's time for the activities in question must be measured, the claim should be dismissed.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the motions for partial summary judgment be ALLOWED in part and DENIED in part as follows:

1.   Defendants' motion for partial summary judgment concerning non-unique items (D.E. 217) be ALLOWED as to (1) plaintiffs' claim for time spent obtaining non-unique equipment and (2) plaintiffs' claim that defendants be required to measure each individual employee's time spent on compensable pre- and post-production activities, and such claims be DISMISSED with prejudice, and that in all other respects the motion be DENIED; and

2.   Defendants' motion for partial summary judgment concerning knife workers (D.E. 215) be ALLOWED as to plaintiffs' claim that defendants be required to measure each individual employee's time spent on compensable pre- and post-production activities and such claim be DISMISSED with prejudice, and that in all other respects the motion be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until **10 September 2010**, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

---

issue was not advanced in defendants' motion and thus is not before the court at the present time.

28

SO ORDERED, this 31 day of August, 2010.

James E. Gates
United States Magistrate Judge